1

2

3

4

5                      UNITED STATES DISTRICT COURT

6                      EASTERN DISTRICT OF CALIFORNIA

7

8  A.L., by and through his *guardian ad*          Case No. 1:23-cv-00885-CDB
   *litem*, Jenae Lewis,
9                                                  ORDER GRANTING DEFENDANTS'
              Plaintiff,                           MOTION FOR PARTIAL SUMMARY
10                                                 JUDGMENT
       v.
11                                                 (Docs. 40-46)
   CITY OF BAKERSFIELD, *et al.*,
12
              Defendants.
13

14

15        Pending before the Court is the motion of Defendants City of Bakersfield and Officers Jacob

16  Heinsohn, Eric Hearn, Stella Chavez, Jamie Orozco, and Amy Droege for partial summary

17  judgment.  (Doc. 40).  Plaintiff A.L. filed an opposition on December 3, 2024.  (Doc. 41).

18  Defendants filed their reply on December 11, 2024.  (Doc. 46).[1]

19  **I.      Background**

20        In connection with Defendants' motion for summary judgment, the parties filed their own

21  statements of disputed and undisputed facts.  *See* (Docs. 40-2, 42, 43).  Plaintiff's statement of

22  disputed facts relies in part on footage from Defendants' body-worn cameras ("BWC"), video files

23  of which were lodged with the Court.  (Doc. 45).  As to virtually all of Plaintiff's disputed facts,

24  Defendants assert numerous evidentiary and argumentative objections.  (Docs. 46-1, 46-2).  Most

25  of the salient facts relevant to Defendants' encounter and arrest of Plaintiff are not significantly

26  disputed.  To the extent material disputes exist, the Court will look to the version most favorable to

27  ────────────────

28  [1] Following the parties' filing of notices consenting to the jurisdiction of a U.S. magistrate judge
    for all purposes, on September 13, 2023, the action was reassigned to the undersigned pursuant to 28
    U.S.C. § 636(c)(1).  (Doc. 17).

1  Plaintiff, as the non-moving party.  *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).  The

2  facts below are drawn from those marked as undisputed by Plaintiff, except where noted.

3  On November 14, 2022, shortly before 10:00 p.m., the Bakersfield Police Department

4  received a report that a 2008 silver Jeep Liberty had been stolen.  (Doc. 43, ¶¶ 1, 5).  The victim

5  reported that she was approached by four to five black male juveniles, all of whom were described

6  as being of 14 to 15 years of age and wearing dark clothing.  The individuals approached the driver's

7  side of her vehicle and asked for directions.  *Id.*, ¶ 2.  One of the individuals pointed a firearm at

8  the victim and told her to get out of the vehicle or he would shoot her.  *Id.*, ¶ 3.  The victim exited

9  the vehicle and the armed individual, along with the others, entered the vehicle and drove away.

10  *Id.*, ¶ 4.  Plaintiff's role up to this point of the carjacking, if any, is not established.  *Id.*, ¶ 1-5.

11  At approximately 11:15 p.m., there was a police radio broadcast of an active pursuit of the

12  stolen vehicle.  *Id.*, ¶¶ 5, 6.  Police, with sirens and lights activated, attempted to initiate a traffic

13  stop.  The driver, later identified as Plaintiff, did not stop and drove through residential streets at

14  high rates of speed.  *Id.*, ¶ 7.  Plaintiff was aware the police were behind him and attempting to pull

15  him over but did not stop.  *Id.*, ¶ 9.  Spike strips on the road caused the vehicle's tires to come apart;

16  Plaintiff continued driving.  *Id.*, ¶ 10.

17  The pursuit ended when Plaintiff crashed the vehicle into a parked car.  *Id.*, ¶ 11.

18  Immediately after crashing the vehicle, Plaintiff exited and began to run from the scene and

19  pursuing officers.  *Id.*, ¶ 12.  Plaintiff ran into a dark dirt lot with only ambient lighting.  *Id.*, ¶ 13.

20  Plaintiff was aware officers were chasing him and ran anyway.  *Id.*, ¶ 15.  Defendant Officer

21  Heinsohn, running after Plaintiff, commanded him to stop.  *Id.*, ¶ 17.  Plaintiff heard the commands

22  but did not stop.  *Id.*, ¶ 18.

23  As Plaintiff ran parallel to the wall of a building on the property, Heinsohn decided to deploy

24  his taser.  *Id.*, ¶ 21.  The taser was ineffective.  *Id.*, ¶ 22.  Defendant Officers Hearn and Orozco

25  also were in pursuit of Plaintiff.  *Id.*, ¶ 23.  Hearn deployed his taser.  *Id.*, ¶ 27.  Hearn's initial

26  deployment of his taser was ineffective, possibly due to Plaintiff's clothing.  *Id.*, ¶ 29.  Thus, Hearn

27  deployed his taser a second time for one cycle.  *Id.*, ¶ 30.

28  The second deployment appeared effective.  *Id.*, ¶ 31.  Plaintiff fell forward to the ground.

2

1    *Id.*, ¶ 32.  Droege was the first officer to arrive where Plaintiff fell and placed her hands on his

2    upper back; Heinsohn and the other pursuing officers arrived closely thereafter.  (Doc. 42, ¶¶ 13,

3    14).[2]  Droege was knocked off balance as Heinsohn arrived and their bodies made contact.  *Id.*, ¶

4    15; (Doc 46-2, ¶ 15).  Heinsohn proceeded to go "hands-on" with Plaintiff and delivered at least

5    two strikes to Plaintiff's head as Plaintiff attempted to push upwards.  (Doc. 46-1, ¶¶ 35, 36, 39).[3]

6    Over the course of approximately seven seconds during which Heinsohn delivered the strikes, his

7    BWC shows him physically struggling with Plaintiff.[4]  The timespan between Heinsohn going

8    "hands-on" to Plaintiff being placed in handcuffs was approximately 20 seconds.  (Doc. 43, ¶ 41).

9    Orozco had his right knee in the middle portion of Plaintiff's back for between five and eight

10   seconds to prevent Plaintiff from standing.  *Id.*, ¶ 42.  Heinsohn, who weighs between 220 and 230

11   pounds, also had his knee on Plaintiff's back to prevent him from standing.  (Doc. 46-2, ¶¶ 28, 29).

12   Defendant Officer Chavez reached Plaintiff as he was laying on the ground; she placed her hands

13   on his ankles until he was handcuffed.  (Doc. 43, ¶ 43).

14       Heinsohn and Hearn were able to place Plaintiff in handcuffs.  *Id.*, ¶ 46.  Heinsohn rolled

15   Plaintiff to his side to search his waistband and noticed Plaintiff was unresponsive; medical aid was

16   requested.  *Id.*, ¶ 47.  Heinsohn called for Chavez to come back over because she had paramedic

17   training.  *Id.*, ¶ 48.  Heinsohn and Chavez tried to move the handcuffs to Plaintiff's front and

18   Plaintiff began pulling away again.  *Id.*, ¶ 49.  Chavez assisted in placing Plaintiff in a recumbent

19   position to prevent him from aspirating.  *Id.*, ¶ 50.  Plaintiff was breathing heavily and made

20

21       [2] Defendants dispute this fact on the grounds that the evidence Plaintiff relies upon (Heinsohn's BWC) does not show Droege arriving first.  Defendants also dispute that Heinsohn "reaches" Plaintiff next

22   and object that the term "reaches" is vague.  *See* (Doc. 46-2, ¶¶ 13-14).  It is sufficiently clear from reviewing the BWC from Heinsohn and Droege that Droege, in fact, is the first officer to arrive

23   immediately followed by other pursuing officers, including Heinsohn.  *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has discretion in appropriate circumstances to consider other materials, [but] it need not do so").  Defendants'

24   meritless objections to these points are overruled.

25       [3] Although Heinsohn's BWC may show that he delivered more than two strikes, Plaintiff's

26   assertion that the BWC "shows at least eight distinct strikes" against Plaintiff (Doc. 43, ¶ 59) is not supported by the cited evidence.

27

28       [4] Plaintiff's assertion that the BWC shows Heinsohn during these seven seconds "continually striking Plaintiff with his fists, at least eight times" (Doc. 42, ¶¶ 21, 44) is not supported by the cited evidence.

1    "snoring" sounds for more than a minute, beginning about two seconds after Heinsohn's final strike

2    to Plaintiff's head or face.  (Doc. 42, ¶¶ 33, 38).  Plaintiff was arrested and booked into juvenile

3    hall.  (Doc. 43, ¶ 56).

4    **II.      Standard of Law**

5         Summary judgment is appropriate where there is "no genuine dispute as to any material fact

6    and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington*

7    *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only

8    if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a

9    fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v.*

10   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422,

11   1436 (9th Cir. 1987).

12        On summary judgment, each party's position must be supported by: (1) citing to particular

13   portions of materials in the record, including but not limited to depositions, documents,

14   declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

15   absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

16   support the fact.  *See* Fed. R. Civ. P. 56(c)(1).  The court may consider other materials in the record

17   not cited to by the parties, but it is not required to do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen*, 237

18   F.3d at 1031.  Furthermore, "[a]t summary judgment, a party does not necessarily have to produce

19   evidence in a form that would be admissible at trial."  *Nevada Dep't of Corr v. Greene*, 648 F.3d

20   1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted).  The focus is on the

21   admissibility of the evidence's contents rather than its form.  *Fonseca v. Sysco Food Servs. of*

22   *Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

23        "The moving party initially bears the burden of proving the absence of a genuine issue of

24   material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*

25   *Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  To meet its burden, "the moving party must either

26   produce evidence negating an essential element of the nonmoving party's claim or defense or show

27   that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

28   burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

4

1099, 1102 (9th Cir. 2000).  If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252).  However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation and citation omitted).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and that judgment is appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Finally, "[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018)  "The record is viewed in the light most favorable to the nonmovants … so long as their version of the facts is not blatantly contradicted by the video evidence[.]"  *Id.* (citation omitted); *see Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) ("[F]or purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence.") (emphasis in original).

**III.    Discussion**

In his first amended complaint, Plaintiff brings the following claims under 42 U.S.C. §

1    1983: excessive force (against all Defendants); municipal liability for unconstitutional custom,

2    practice, or policy (against all Defendants); and failure to train (against Defendant City of

3    Bakersfield).  *See* (Doc. 30).  Under state law, and against all Defendants, Plaintiff asserts battery,

4    negligence, and violation of the Bane Act (Cal. Civ. Code § 52.1).  *See id.*

5         In their motion for partial summary judgment, Defendants argue that Plaintiff's excessive

6    force claims fail as to Defendants City of Bakersfield, Hearn, Chavez, Orozco, and Droege, as do

7    any nested failure to intervene claims, and that the individual Defendants are entitled to qualified

8    immunity.  *See* (Doc. 40-1).  Defendants further assert that Plaintiff's municipal liability and failure

9    to train claims fail as a matter of law.  Lastly, Defendants argue that all state law claims as to all

10   Defendants except Heinsohn fail, as well.  *See id.*

11        Turning first to the claims brought pursuant to federal law, the Civil Rights Act provides:

12        Every person who, under color of [state law] ... subjects, or causes to be subjected,
         any citizen of the United States ... to the deprivation of any rights, privileges, or
13       immunities secured by the Constitution ... shall be liable to the party injured in an
         action at law, suit in equity, or other proper proceeding for redress ...
14

15   42 U.S.C. § 1983.  To prevail on a valid claim under § 1983, a plaintiff must prove that the conduct

16   complained of was committed by a person acting under color of state law, and that this conduct

17   deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the

18   United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Monell v. Dep't of Soc. Servs.*, 436

19   U.S. 658, 690–95 (1978).

20        **A.    Governing Law – Fourth Amendment, Excessive Force**

21        The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

22   houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. Amend. IV.

23   Any claim asserting that a law enforcement officer used excessive force during the course of an

24   arrest, investigatory stop, or other seizure of a citizen is analyzed under the objective reasonableness

25   standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Under that

26   standard, "'[t]he force which [i]s applied must be balanced against the need for that force: it is the

27   need for force which is at the heart of the *Graham* factors.'"  *Liston v. Cnty. of Riverside*, 120 F.3d

28   965, 976 (9th Cir. 1997) (quoting *Alexander v. City and Cnty. of San Francisco*, 29 F.3d 1355,

1367 (9th Cir. 1994).  Courts are required to "balance the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (citations and quotations omitted).  "Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002).

However, under the doctrine of qualified immunity, police officers are not liable under § 1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time." *D.C. v. Wesby*, 583 U.S. 48, 49 (2018).  In its qualified immunity analysis, a court may use either prong as its starting point and, thus, exercise its "discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional." *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021).

Under the first prong of the analysis, "whether a constitutional right was violated … is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009); *see Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of the qualified immunity analysis, the court considers whether the facts show a violation of a constitutional right).  In contrast, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent," meaning "it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Wesby*, 583 U.S. at 63 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).  Stated differently, "[a] right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021)) (citation omitted).  A § 1983 plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct. *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023) ("There is no analogous burden on § 1983

1    defendants to find factually on-point cases clearly establishing the lawfulness of an officer's

2    actions.  Nor must § 1983 defendants come forward with precedent showing that the unlawfulness

3    of their conduct was not clearly established."); *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir.

4    1991).

5        "For a constitutional right to be clearly established, a court must define the right at issue

6    with specificity and not … at a high level of generality."  *Gordon v. Cnty. of Orange*, 6 F.4th 961,

7    968 (9th Cir. 2021) (internal quotations and citation omitted).  When identifying the right that was

8    allegedly violated, a court must define the right more narrowly than the constitutional provision

9    guaranteeing the right, but more broadly than all of the factual circumstances surrounding the

10   alleged violation.  *See Watkins v. City of Oakland*, *Cal*., 145 F.3d 1087, 1092–93 (9th Cir. 1998).

11   "The Supreme Court has 'repeatedly ... stressed the importance of resolving immunity questions at

12   the earliest possible stage of litigation."  *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010)

13   (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)).

14       "Use of excessive force is an area of the law 'in which the result depends very much on the

15   facts of each case,' and thus police officers are entitled to qualified immunity unless existing

16   precedent 'squarely governs' the specific facts at issue."  *Kisela v. Hughes*, 584 U.S. 100, 104

17   (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)) (per curiam).  In other words, a plaintiff

18   bringing "excessive force claims must thus point to an existing rule that squarely governs the facts

19   at issue and that moves the officer's actions outside the hazy border between excessive and

20   acceptable force."  *Hopson*, 71 F.4th at 698 (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

21   The plaintiff bears the burden of showing that the right at issue was clearly established.  *Emmons*

22   *v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019); *see Rivas-Villegas*, 595 U.S. at 6 (burden

23   is with plaintiff to identify precedent "that put [defendant] on notice that his specific conduct was

24   unlawful").

25       **B.      Discussion – Fourth Amendment, Excessive Force**

26       As Defendants correctly note in their motion, Plaintiff cannot bring excessive force claims

27   under the Fourth Amendment against a municipal entity.  The Supreme Court has held "that a

28   municipality can be found liable under § 1983 only where the municipality itself causes the

8

constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom … inflicts the injury that the municipality may be held liable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citations and quotations omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("vicarious liability is inapplicable to *Bivens* and § 1983 suits" and therefore "a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff does not respond to this argument or argue to the contrary. It follows that Plaintiff's excessive force claims against the City of Bakersfield fail.

As for Plaintiff's excessive force claims against Defendants Hearn, Orozco, Chavez, and Droege, the Court will begin by considering the second prong of the qualified immunity analysis, namely, whether Defendants' conduct violated a right clearly established at the time. *See Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) ("In this case, we exercise our discretion to consider only the second prong of the qualified immunity analysis…").

Qualified immunity may be denied if the constitutional violation was "obvious." *See Wesby*, 583 U.S. at 64 (quoting *Brosseau*, 543 U.S. at 199). As discussed further below, this is not such a case. *See id.* (noting that instances in which a violation of constitutional law are "obvious" without more specific case law are "rare" and that "a body of relevant case law is usually necessary to clearly establish the answer"). The undisputed facts establish that a vehicle was stolen at gunpoint. (Doc. 43, ¶ 1). Sometime later, police attempted to initiate a traffic stop. The driver, later identified as Plaintiff, did not stop and drove through residential streets at high rates of speed. *Id.*, ¶ 7. Immediately after crashing the vehicle, Plaintiff exited and began to run from the scene and pursuing officers. *Id.*, ¶ 12. Plaintiff heard but failed to heed pursuing officers' commands to stop. *Id.*, ¶ 18. Heinsohn deployed his taser, which was ineffective. *Id.*, ¶¶ 21, 22. Hearn then deployed his taser twice and the second deployment appeared effective. *Id.*, ¶¶ 27, 30-31. Plaintiff fell forward to the ground. *Id.*, ¶ 32. Droege arrived and possibly placed her hands on Plaintiff's back. (Doc. 42, ¶ 13). Heinsohn arrived immediately thereafter and delivered multiple strikes to Plaintiff's head (Doc. 43, ¶¶ 35, 39) and had his knee on Plaintiff's back to restrain him (Doc. 42, ¶ 28).

1    The timespan between Heinsohn going "hands-on" to Plaintiff being placed in handcuffs

2    was approximately 20 seconds. *Id.*, ¶ 41. Orozco had his right knee in the middle portion of

3    Plaintiff's back to prevent him from standing. Chavez reached Plaintiff as he was laying on the

4    ground and placed her hands on his ankles until he was handcuffed by Heinsohn and Hearn. *Id.*,

5    ¶¶ 43, 46. Heinsohn rolled Plaintiff to his side to search his waistband and noticed Plaintiff was

6    unresponsive; medical aid was requested. *Id.*, ¶ 47.

7    Resolving all disputed facts in the light most favorable to Plaintiff, it is clear that this case

8    does not present a scenario where obvious "clearly established" rights have been violated by Hearn,

9    Orozco, Chavez, and Droege. *See Hopson*, 71 F.4th at 695 (finding constitutional violation was

10    not obvious when officers pointed a gun at plaintiff and forcefully extracted him from his car

11    without identifying themselves as law enforcement officers); *Reese*, 888 F.3d at 1040

12    (constitutional violation non-obvious where police officer shot plaintiff while he was retreating into

13    his apartment and allegedly no longer posed a threat of harm); *see also Spencer v. Pew*, 117 F.4th

14    1130, 1140, 1142 (9th Cir. 2024) (constitutional violations non-obvious where officers pulled over

15    noncompliant plaintiff for traffic violation, grabbed and twisted his wrist as he stepped out of the

16    vehicle when told to, punched plaintiff in the face, knocked him to the ground, tased him at least

17    four times and repeatedly punched and kicked him as he struggled and slammed his head into the

18    ground).

19    In his opposition, Plaintiff fails to cite any controlling case law establishing a violation of a

20    clearly established right at the time of the incident in regards to the use of force by Hearn, Orozco,

21    Chavez, and Droege. (Doc. 41 at 16-20). Indeed, Plaintiff does not address the use of force at issue

22    in Defendants' motion. Plaintiff discusses only the force used by Heinsohn, which is not directly

23    at issue here as Heinsohn is not included in Defendants' motion. It is unclear from Plaintiff's first

24    amended complaint (Doc. 30) and opposition (Doc. 41) whether his excessive force claims are

25    limited to Heinsohn, alleging only failure-to-intervene claims against Hearn, Orozco, Chavez, and

26    Droege, or whether he brings excessive force claims in addition to failure-to-intervene claims

27    against Hearn, Orozco, Chavez, and Droege. The Court will presume the latter and proceed to

28    analyze any excessive force claims against the aforementioned four Defendants.

1    Plaintiff cites to four non-binding cases from the Northern District of California. *See S. B.*
2  *v. Cnty. of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) ("Plaintiffs argue that two district court
3  decisions (within the Ninth Circuit but outside of California) provided clear warning to [defendant].
4  However, district court decisions — unlike those from the courts of appeals — do not necessarily
5  settle constitutional standards or prevent repeated claims of qualified immunity.  Moreover, even
6  if district court decisions could clearly establish the law for purposes of qualified immunity, the
7  cases on which plaintiffs rely are insufficient.") (citations and quotations omitted); *Hamby v.*
8  *Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (holding that, where plaintiff cited four district
9  court opinions in support of denial of qualified immunity, such cases "do not necessarily settle
10  constitutional standards or prevent repeated claims of qualified immunity") (quoting *Camreta v.*
11  *Greene*, 563 U.S. 692, 709 n.7 (2011)).

12    Furthermore, the cases are clearly distinguishable, even as to the force used by Heinsohn.
13  In *Jaramillo v. City of San Mateo*[5], plaintiff asserted that plainclothes police officers walked up to
14  the plaintiff's car, which was parked on the side of the road, after noticing the vehicle's registration
15  was expired.  After asking the plaintiff whether the car belonged to him, an officer asked for
16  identification.  Plaintiff reached into his pocket but was told by the officer not to do so.  Plaintiff
17  stated that, at the time, he was worried the officers were not actually police, having heard that
18  criminals were pretending to be police to steal from people.  After turning and beginning to walk
19  away, the officer grabbed the plaintiff's jacket, while another plainclothes officer grabbed him from
20  his right side, and another came from his left side.  The plaintiff felt a blow to his ear, then was
21  knocked to the ground face down against the sidewalk, then additional blows to his rib, an officer
22  on top of his neck, and another putting his arms behind his back, handcuffing him.  The plaintiff
23  later was found to have a broken rib.  *Jaramillo*, 76 F. Supp. 3d at 912–13.

24    Here, Defendants pursued Plaintiff on foot as he fled from them, after a high-speed chase
25  of a vehicle stolen at gunpoint, which Plaintiff was driving.  *Jaramillo* involves no such comparable
26  facts.  Additionally, in finding a violation of a clearly established right, the *Jaramillo* court cited to
27  only one case from a different circuit.  *Id.* at 923.

28

---

[5] 76 F. Supp. 3d 905, 914 (N.D. Cal. 2014).

1       In *Kyles v. Baker*[6], police responded to a complaint at a home address.  According to

2   plaintiff's version of events, upon exiting his sedan in the driveway after the arrival of defendant

3   officer, the officer already had his firearm drawn and pointed at plaintiff.  Plaintiff was told to put

4   his hands on his head and turn around, was then forced to the ground, tased multiple times, struck

5   with a flashlight, and mauled by a police dog before being arrested.  *See Kyles*, 72 F. Supp. 3d at

6   1041.

7       In denying qualified immunity, the *Kyles* court stated that "Fourth Amendment principles

8   described therein, put the officers on notice that a *calm and nonresisting* suspect such as Kyles

9   could not constitutionally be forced to the ground and repeatedly struck." *Id.* at 1041-42 (emphasis

10  added) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007)).  The *Kyles* court

11  also found that a taser could not be lawfully deployed against an individual acting in a manner

12  claimed by the plaintiff.  *Id.* (citing *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011)).  The *Kyles*

13  court noted that *Mattos* put the officer on notice that use of a taser under those circumstances was

14  unconstitutional and that, as in *Mattos*, Kyles' alleged offense was minor.  As with *Jaramillo*, the

15  facts in the instant action differ substantially from those in *Kyles*, including insofar as Plaintiff

16  actively fled from officers and resisted their attempts to stop him.

17      In *Hernandez v. Hodges*[7], law enforcement officers undertook a traffic stop of a stolen

18  vehicle.  The driver and three of the vehicle's four passengers were detained without incident.

19  Hernandez, who was a backseat passenger and was unaware the vehicle was stolen, was the last

20  occupant taken into custody.  During his arrest, an officer placed him in a carotid hold, struck him

21  six times with a metal flashlight, and held a gun to his head and threatened to shoot, all while

22  Hernandez lay unresponsive on the pavement.  Another officer present observed the use of force

23  and assisted in handcuffing Hernandez.  *See Hernandez*, 2023 WL 5336856, at *1.  Aside from

24  presenting starkly different facts than those at issue here, *Hernandez* was decided in 2023.  The

25  incident at issue in this case took place on November 14 and 15, 2022.  (Doc. 30 at 5).  Thus, for

26  multiple reasons addressed above, *Hernandez* could not have put officers on notice that their

27  ──────────────

      [6] 72 F. Supp. 3d 1021, 1041 (N.D. Cal. 2014).

28    [7] No. 20-CV-01183-AGT, 2023 WL 5336856, at *1 (N.D. Cal. Aug. 17, 2023).

1    conduct violated a clearly established right.

2         In *Knapps v. City of Oakland*[8], plaintiff, a mental health worker, was following a patient

3    who left the facility to make sure the patient, who had been making suicidal threats, did not harm

4    himself.  Plaintiff had called the police to request assistance and remained on the phone with them.

5    Upon seeing a police car, plaintiff attempted to wave the car down, but the officer did not exit the

6    vehicle.  The patient then attempted to walk into the street.  Plaintiff began restraining the patient.

7    An officer in an undercover vehicle that had been following behind the police car noticed the events

8    and exited the vehicle near plaintiff.  The officer never identified himself, nor asked plaintiff to

9    stop what he was doing, nor asked him to step away from the patient, nor directed him to put his

10   hands behind his back or to get on the ground.  Plaintiff stood and stepped away from the patient,

11   putting his hands above his head to show that he was holding a cell phone and not a weapon.  The

12   officer put plaintiff in a carotid hold and the plainitiff began choking and gagging.  Another officer

13   who had arrived at the scene handcuffed plaintiff while he was on the ground, while the first officer

14   used a bent wrist hold on plaintiff to bring him to his feet.  Plaintiff was not arrested.  *See Knapps*,

15   647 F. Supp. 2d at 1144-45.  In discussing its denial of qualified immunity, the court noted that

16   plaintiff was not resisting and the officer had an extremely hostile and unprofessional attitude,

17   failed to announce himself as a police officer after jumping out of an undercover vehicle, and

18   immediately swore at plaintiff.  *Id.* at 1163.  Once again, the facts of that case are materially

19   distinguishable from those at issue here.

20        Plaintiff also cites to two Ninth Circuit cases: *A.D. v. State of California Highway Patrol*[9]

21   and *Zion v. County of Orange*.[10]  The former holds that "a police officer violates the Fourteenth

22   Amendment due process clause if he kills a suspect when acting with the purpose to harm, unrelated

23   to a legitimate law enforcement objective."  *A.D.*, 712 F.3d at 450.  In that case, after a high-speed

24   chase of a stolen vehicle, the driver hit a chain link fence and was boxed in by patrol cars.  An

25

26        [8] 647 F. Supp. 2d 1129 (N.D. Cal. 2009), amended in part, No. C 05-02935 MEJ, 2009 WL
     10736653 (N.D. Cal. Sept. 8, 2009).

27        [9] 712 F.3d 446 (9th Cir. 2013).

28        [10] 874 F.3d 1072 (9th Cir. 2011).

1    officer approached the vehicle and attempted to open a door and break a window.  The driver

2    refused to turn off the car and attempted to reverse and ram a patrol car multiple times.  Shortly

3    thereafter, the officer opened fire on the driver.  The officer was told to stop by his supervisor but

4    continued shooting, firing 12 rounds through the passenger-side window and emptying his

5    magazine.  Other officers nearby had guns drawn but did not fire any shots.  Unquestionably, these

6    facts bear little to no resemblance to those here.

7          Finally, in *Zion v. County of Orange*, police officers responded to a call regarding decedent,

8    who suffered seizures and had a seemingly related episode during which he bit his mother and cut

9    her and his roommate with a knife.  The first responding officer was stabbed in the arms by plaintiff

10   as he exited his vehicle.  The second officer then shot at plaintiff nine times from about 15 feet

11   away.  The officer ran to where the plaintiff fell to the ground and fired nine more rounds into

12   plaintiff's body from a distance of about four feet.  He then took a running start and stomped on

13   plaintiff's head three times.  Plaintiff died at the scene.  *Zion*, 874 F.3d at 1075.  The Ninth Circuit

14   explained that "[i]f a jury determines that [plaintiff] no longer posed an immediate threat, any

15   deadly force [the officer] used after that time violated long-settled Fourth Amendment law.  We

16   have cases holding that the use of deadly force against a non-threatening suspect is unreasonable."

17   *Id.* at 1076.  The facts of this case, like the others cited by Plaintiff, are materially distinguishable

18   from the instant incident and, thus, would not put officers on notice regarding any violation of a

19   clearly established right.

20         The issue of the force used by Heinsohn is not before the Court.  However, insofar as

21   Plaintiff asserts that the force used by Hearn, Orozco, Chavez, and Droege should be tied to the

22   force used by Heinsohn under an "integral participant" theory, Plaintiff provides no briefing,

23   argument, or citations to authority for that assertion (aside from a short reference in his amended

24   complaint (Doc. 30 at 7)).  In any event, Plaintiff has not cited precedent that put any of the

25   individual Defendants on notice that their specific conduct was unlawful.  *See Taylor v. Barkes*,

26   575 U.S. 822, 827 (2015) (holding that existing precedent must have "placed beyond debate the

27   unconstitutionality of" the officials' actions, as those actions unfolded in the specific context of the

28   case at hand and thus, a plaintiff must prove that "precedent on the books" at the time the officials

1   acted "would have made clear to [them] that [their actions] violated the Constitution"); *Peck v.*

2   *Montoya*, 51 F.4th 877, 891 (9th Cir. 2022) ("Liability requires at least enough individual

3   involvement from each defendant to put him on notice that his conduct might reasonably lead to a

4   constitutional violation.").

5       Accordingly, Plaintiff has failed to meet his burden to show that the right at issue was clearly

6   established and put Defendants on notice that their specific conduct was unlawful.   Thus,

7   Defendants Hearn, Orozco, Chavez, and Droege are entitled to qualified immunity.  *See Baxter v.*

8   *City of Hemet*, 728 F. Supp. 3d 1127, 1144 (C.D. Cal. 2024) (finding officers entitled to qualified

9   immunity where plaintiff failed to identify either binding authority or a consensus of cases

10  demonstrating officers would have had "fair notice" their conduct was unlawful).   As the

11  aforementioned Defendants are entitled to qualified immunity, the Court need not address the first

12  prong of the qualified immunity analysis, namely, whether a federal statutory or constitutional right

13  was violated.

14      **C.    Discussion – Failure to Intervene**

15      "[P]olice officers have a duty to intercede when their fellow officers violate the

16  constitutional rights of a suspect or other citizen." *United States v. Koon,* 34 F.3d 1416, 1447 n. 25

17  (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996).  Importantly, however, officers can be

18  held liable for failing to intercede only if they had a realistic opportunity to intercede. *Cunningham*

19  *v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), as amended Oct. 31, 2000 (holding that evidence

20  showed non-present officers and non-shooting officers had no "realistic opportunity" to intercede

21  to prevent shooting of plaintiffs).

22      It follows that a "police officer cannot be held liable under a failure-to-intervene theory

23  when a fellow officer engages in a split-second use of excessive force." *Andrich v. Kostas*, 470 F.

24  Supp. 3d 1048, 1062 (D. Ariz. 2020), aff'd, No. 22-16226, 2023 WL 6157407 (9th Cir. Sept. 21,

25  2023).  That is because liability under a failure-to-intervene theory "is reserved for circumstances

26  where the use of excessive force extends over a relatively longer period of time, such that other

27  officers in the vicinity have a reasonable opportunity to observe it, recognize its impermissible

28  character, and take action to stop it." *Id.*

In considering whether an officer charged with failing to intervene in violation of the Fourth Amendment is protected from liability by qualified immunity, a court must examine, under the second prong of the qualified immunity test, whether "prior cases put a reasonable officer on notice of their obligation to intervene under the actual circumstances presented in this case." *Perkins v. City of Modesto*, No. 119CV00126JLTEPG, 2023 WL 3620901, at *13 (E.D. Cal. May 24, 2023) (citing *al-Kidd*, 563 U.S. at 741). Some courts generally hold that the issue of whether an officer had sufficient time to intervene should be for the jury where disputes exist as to material facts. *E.g., Beltran v. Cnty. of San Bernardino*, No. EDCV1901522CJCKKX, 2021 WL 3185474, at *6 (C.D. Cal. Jan. 28, 2021) (citation and quotation omitted); *cf. Dunivin v. Cnty. of Riverside*, No. EDCV 21-0040 JGB (KKx), 2023 WL 11818943, at *12 (C.D. Cal. Nov. 12, 2023 ("[T]he law regarding failure to intervene is not clearly established and, on that theory, the deputies would be entitled to qualified immunity.") (citing cases). As Supreme Court authority provides that qualified immunity shields officials from money damages unless a plaintiff shows that the right allegedly violated was "clearly established" such that "every reasonable official would have understood what he is doing violates that right," the Court will conduct a qualified immunity analysis here, as well. *al-Kidd*, 563 U.S. at 731.

Plaintiff argues that the operative use of force giving rise to his failure-to-intervene theory is "the repeated strikes to [P]laintiff's head." (Doc. 41 at 18). It generally is undisputed that these strikes lasted approximately seven seconds, as depicted in Heinsohn's BWC. *See* (Doc. 42, ¶¶ 21, 44; Exhibit 7, Heinsohn BWC footage, 10:35-10:42). However, Plaintiff offers no case authority with analogous facts sufficient to put the individual Defendants on notice of a need to intervene to prevent violation of a clearly established right under these circumstances.[11]

---

[11] The Court notes that three full pages of Defendants' argument in support of summary judgment on Plaintiff's failure-to-intervene claim is virtually verbatim cut/paste from the opinion of U.S. District Judge Jennifer L. Thurston in *Perkins v. City of Modesto*, 2023 WL 3620901 (E.D. Cal. May 24, 2023). *Cf.* (Doc. 40 at 14-16) with *Perkins*, 2023 WL 3620901, at *10-11. Counsel for Defendants copied their argument from the *Perkins* opinion without citation, attribution, or any acknowledgement that they quoted a different judge of this Court for substantial portions of their briefing. While acknowledging that lawyers permissibly may borrow from others their ideas and authorship and pass them off as their own, the undersigned expects counsel to be forthright and properly cite quoted authority when engaging in such significant and wholesale unattributed copying. *See generally* Benjamin G. Shatz & Colin McGrath, *Beg, Borrow, Steal: Plagiarism vs. Copying in Legal Writing*, 26 Cal. Litig. 3 (2013), *available at* https://perma.cc/HFM7-NMNJ (last visited Feb. 21, 2025).

All case authority cited by Plaintiff, as discussed above in subsection "B," is either inapplicable or readily distinguishable. *See, e.g., Gellos v. City of Phoenix*, No. CV-24-01529-PHX-GMS, 2025 WL 307050, at *3 (D. Ariz. Jan. 27, 2025) (officer who observed partner place suspect in an armlock and then apply additional force despite suspect not resisting entitled to qualified immunity on failure-to-intervene theory of liability); *Perkins*, 2023 WL 3620901, at *17 ("the body cam footage demonstrates that [officer Olson] had no indication [officer Ramar] would shoot such to give him sufficient time to do anything to prevent Ramar from shooting Plaintiff … Plaintiff has pointed to no cases that are even remotely factually analogous, and the Court has been unable to identify any such cases in its extensive independent research … Olson is entitled to qualified immunity as to Plaintiff's allegation that he failed to intervene in the shooting").

Accordingly, Plaintiff has failed to meet his burden to provide authority that put Defendants on notice that their failure to intervene under the operative circumstances — specifically, within seven seconds of another officer's delivery of allegedly excessive strikes to a suspect attempting to push himself up from a prone position — may result in violation of Fourth Amendment rights. Thus, Defendants Hearn, Orozco, Chavez, and Droege are entitled to qualified immunity as to Plaintiff's failure-to-intervene claim, as well.

**D.    Discussion – Municipal Liability: Unconstitutional Custom, Practice, or Policy and Failure to Train**

Defendants aver Plaintiff has not alleged sufficient facts to establish *Monell* liability. (Doc. 40-1 at 24-26) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Pursuant to *Monell*, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, the local government "is subject to suit under § 1983 only 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'" *Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1096-97 (9th Cir. 2013) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). To establish a municipality's liability under *Monell*, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the

1    policy was the moving force behind the constitutional violation." *Harmon v. City of Pocatello*, 854

2    Fed. Appx. 850, 854 (9th Cir. 2021) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc.*

3    *Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001)).  "The Supreme Court has made clear that policies

4    can include written policies, unwritten customs and practices, failure to train municipal employees

5    on avoiding certain obvious constitutional violations, and in rare instances, single constitutional

6    violations are so inconsistent with constitutional rights that even such a single instance indicates at

7    least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134,

8    1153 (9th Cir. 2021) (internal and concluding citation omitted).

9        Regarding a failure to train, mere negligence in a municipal entity's training of its

10    employees is not enough.  "To allege a failure to train, a plaintiff must include sufficient facts to

11    support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy

12    that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional

13    injury would not have resulted if the municipality properly trained their employees." *Id.* (citing

14    *Blankenhorn*, 485 F.3d at 484).

15        As a preliminary matter, while Plaintiff appears to allege municipal liability against the City

16    of Bakersfield and the individual Defendants (Doc. 30 at 8), he now concedes that municipal

17    liability cannot be alleged against individuals (*see* Doc. 41 at 20) and, as such, this claim fails

18    against Heinsohn, Hearn, Orozco, Chavez, and Droege.  As to Defendant City of Bakersfield,

19    Plaintiff fails to present any issue of fact as to the existence of a custom, practice, or policy relating

20    to excessive force, failure to intervene, or failure to train.  While Plaintiff is correct that municipal

21    liability can be found for an informal policy, he fails to demonstrate the existence of any such

22    informal policy.  (Doc. 41 at 21).  Instead, Plaintiff points only to the incident at issue for the

23    existence of such a policy.  Plaintiff states that this incident, plus the internal review of the incident

24    by Lieutenant Jared Diederich finding none of the individual Defendants' actions improper,

25    demonstrates the existence of an informal policy.  *Id.*

26        Plaintiff is incorrect and, accordingly, his municipal liability claims against the City of

27    Bakersfield for unconstitutional custom, practice, or policy and failure to train both fail.  *See*

28    *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (plaintiff cannot demonstrate the existence

1   of a policy based on a single occurrence of unconstitutional action committed by a non-

2   policymaking employee); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for

3   improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon

4   practices of sufficient duration, frequency and consistency that the conduct has become a traditional

5   method of carrying out policy."); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989)

6   ("Davis has failed to establish that there is a genuine issue of material fact regarding the existence

7   of a policy of inadequate training, inadequate medical treatment of prisoners, or deliberate

8   indifference to the use of excessive force.  A plaintiff cannot prove the existence of a municipal

9   policy or custom based solely on the occurrence of a single incident of unconstitutional action by

10  a non-policymaking employee.").

11          **F.      State Law Claims**

12          A failure to oppose summary judgment on claims for which a movant seeks dismissal

13  constitutes abandonment of those claims.  *See Estate of Shapiro v. United States*, 634 F.3d 1055,

14  1060 (9th Cir. 2011); *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (per

15  curiam).

16          Here, Plaintiff fails to oppose Defendants' motion in any way as to the state law claims

17  asserted (*e.g.*, battery, negligence, and Bane Act).  *See generally* (Doc. 41).  Indeed, he fails to even

18  mention these claims.  Thus, Plaintiff has abandoned his battery, negligence, and Bane Act claims

19  brought under state law and summary judgment is properly entered thereto.  *See Shakur v. Schriro*,

20  514 F.3d 878, 892 (9th Cir. 2008) (holding that a plaintiff had abandoned a claim by "fail[ing] to

21  raise the … issue in his opposition to summary judgment"); *Vaughan v. Cnty. of San Bernardino*,

22  No. CV1201432MMMSPX, 2013 WL 12471115, at *12, *17  (C.D. Cal. Nov. 6, 2013) (same)

23  (citing *Jenkins* and *Shakur*).

24  **IV.     Conclusion**

25          For the reasons set forth above, IT IS HEREBY ORDERED that:

26          1.      Defendants' motion for partial summary judgment (Doc. 40) is GRANTED.

27          2.      Summary judgment shall be entered in favor of (1) Defendants Hearn, Orozco,

28                  Chavez and Droege as to Plaintiff's Fourth Amendment and state law claims, and

(2) all Defendants as to Plaintiff's municipal liability claims.

3.      The action shall proceed only on Plaintiff's Fourth Amendment excessive force and state law claims against Defendant Heinsohn.

IT IS SO ORDERED.

Dated:   **February 24, 2025**

_____
UNITED STATES MAGISTRATE JUDGE